**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

_____

BRYCE T. STRICKLAND; DAVID T.         CAUSE NO. CV 95-62-M-JCL
SHUMATE; LINDA SHUMATE;
DEPRESS JOHNSON; NOBLE DANIEL
CLAY, SR.; GORDON SALMONS; and
JONAS PRICE,

                                      ORDER

                    Plaintiffs,

        vs.

TRUCKERS EXPRESS, INC.

                    Defendant.

_____

## I.  INTRODUCTION

This lawsuit was originally filed in the U.S. District Court for the Northern District of Alabama in 1994, but was transferred to the District of Montana on May 22, 1995.  Plaintiffs were independent contractor owner/operators who leased their trucks and services to haul freight loads for Truckers Express, Inc. (TEI).  The Plaintiffs' claims were generally predicated upon TEI's alleged improper calculation of their compensation pursuant to the terms of their lease agreements.

Plaintiffs' asserted jurisdiction over the claims advanced by the original Complaint was properly based both upon diversity

ORDER - PAGE 1

of citizenship, and federal question jurisdiction emanating from matters governed by the Interstate Commerce Act.  Subsequently, the Court determined jurisdiction was properly based on 49 U.S.C. § 11705 as it existed at the time this lawsuit was filed, and such private right of action was preserved by the Interstate Commerce Commission Termination Act of 1995.[1]

The action was prosecuted as a class action after the Court granted class certification on June 9, 1999.[2]

For purposes of trial, the Court bifurcated the issue of liability from the issue of damages.  Consequently, the case proceeded to trial in 2002 on TEI's liability to the named Plaintiffs.  Following trial the Court found TEI liable, and on July 8, 2004, the Court set forth the specific basis for such liability as follows:

The root of the parties' controversy was a dispute over the proper calculation of Plaintiffs' compensation.  The lease agreements established their compensation as a certain percentage amount of the gross revenue of each load Plaintiffs hauled.  The parties' lease agreements consist of a standardized form which

---

[1]June 28, 2004 Order at 6.

[2]The class consists of all owner/operators who leased their trucks and services to TEI at any time between November 11, 1988, and June 24, 2001.  This is the time period in which TEI deducted a 6% insurance surcharge from gross revenue before calculating each owner/operator's compensation, as more fully discussed below.

ORDER - PAGE 2

provided for Plaintiffs' compensation as follows:[3]

     3.  <u>COMPENSATION</u>:

TEI shall pay lease payments to the Contractor in accordance with the schedule provided in Exhibit "A" for the transport of the commodities on the equipment.

In the event that Contractor's lease payments are based upon revenue, that term is defined as the applicable charges as invoiced by TEI less:

     A.  Charge deducted by interlining/augmenting carriers.

     B.  Brokerage charges.

     C.  Pick-up, transfer, delivery, and accessorial charges for services not performed by Contractor.

     D.  Any portion of the line haul revenue not transported by Contractor equipment.

     E.  Fuel and insurance surcharge and permits.

...........

<u>EXHIBIT "A"</u>

<u>COMPENSATION</u>

Tractor with Trailer

| | |
|---|---|
| <u>82%</u> | Lumber & Roofing |
| <u>80%</u> | Other Regulated Freight |
| <u>75% </u> | Machinery |
| <u>75%</u> | Minimum on Brokered, Trip Lease, & Agent Freight |

As set forth in the February 3, 2003 Order establishing

---

[3] *See* May 24, 2002 Final Pretrial Order at 3.

liability in this case the calculation of the Plaintiffs'

compensation is summarized as follows:

> The basic method by which Defendant calculates the
> owner-operator's share of revenue is not in dispute.
> Defendant starts with the full amount of the shipping bill
> and subtracts out the pass through charges to arrive at the
> freight charge.  It then multiplies that charge by .06 to
> calculate the insurance "surcharge," and deducts that amount
> from the freight charge.  The resulting number, which is
> equal to 94% of the freight charge, is set forth on the
> owner-operator's settlement statement and labeled "line
> haul."  Defendant multiplies this "line haul" figure by the
> appropriate percentage from the lease (the applicable amount
> set forth on the above-referenced Ex. A to the lease) to
> arrive at what it calls "contractor revenue."  Additional
> deductions such as truck payments and bobtail insurance
> charges are typically deducted from this figure, and set
> forth on the settlement statement, resulting in the final
> compensation to be paid to the owner-operator.[4]

Accordingly, the lease agreements allowed TEI to first make

a deduction from the gross revenue for an insurance surcharge,

but the problem with such procedure giving rise to this

litigation was that the the specific amount of the deduction was

not stated in the lease agreements.  As it turned out the actual

amount of the deduction was 6%, but TEI had not properly

disclosed such figure to Plaintiffs either before or after their

compensation was calculated.  Therefore, the Court found TEI

liable for both a regulatory and contractual breach of 49 C.F.R.

§ 376.12(g) for its failure to disclose documentation to

Plaintiffs as required by law which would have sufficiently shown

the 6% insurance surcharge.

---

[4]February 3, 2003 Order at 4-5.

On July 8, 2004, the Court also issued its ruling establishing the methodology by which the damages to which each named Plaintiff is entitled would be calculated.  In substance, since TEI failed to disclose the 6% figure to Plaintiffs the deduction was disallowed and Plaintiffs' compensation had to be recalculated based on the gross revenue without the 6% deduction. Therefore, the Court awarded Plaintiffs additional compensation in the amount of 80% of the 6% figure improperly deducted from each load Plaintiffs hauled during the class period.[5]

The Court notes the parties do not dispute that the insurance surcharge figure is 6%.  They also do not dispute the way in which Plaintiffs' additional compensation was calculated pursuant to the July 8, 2004 Order.  The Court notes, however, there may be some dispute as to the proper percentage figure from the lease agreements (depending on the type of load) which applies for the purpose of determining the additional compensation to which a particular class member is entitled.

Following the damages ruling the case proceeded to a determination of the notice and claims procedure that would be utilized with respect to absent class members.  On June 16, 2005, the Court approved the class action claims procedure and protocol, and notice of the class action was sent to potential class members.  Class members have since submitted their claim

_____

[5]July 8, 2004 Order at 2.

forms in response to the notice, and the damages of each class member can now be calculated.

On September 27, 2006, Chief Judge Donald W. Molloy issued an Order directing that a final judgment be entered pursuant to Fed. R. Civ. P. 54(b) in accordance with Judge Erickson's determinations.  This aggregate judgment certifies as final the liability and damages rulings as to both the named Plaintiffs and all class members.

As discussed in detail below, the matter now pending before the Court is TEI's Motion to Allow Offsets.[6]  The motion has raised issues as to how to resolve counterclaims or offsets TEI contends it is entitled to assert against the award to which the Plaintiffs and each class member is entitled.  The Court held a hearing on August 1, 2006, to discuss a procedure for resolving the pending motion and TEI's counterclaims or offsets.  Following the hearing the Court issued an Order directing the parties to submit briefs on issues identified in that Order.

The parties' briefs set forth their respective positions regarding the propriety of the specific counterclaims or offsets asserted by TEI, as well as the procedure each party believes should be utilized to resolve those counterclaims or offsets.  Some of the issues presented are dispositive as to certain

---

[6]TEI asserts three categories of "offsets" or "counterlcaims".  The substance of these offsets or counterclaims and their proper characterization for dispositional purposes are discussed below.

ORDER – PAGE 6

counterclaims, so the Court will address them in this Order.

## II.  DISCUSSION

### A.  Statute of Limitations

One significant issue raised by the parties pertains to the proper tolling date for the statute of limitations period applicable to TEI's counterclaims.  TEI contends their Answer and Counterclaims filed May 6, 1996, tolled the statute of limitations on all of the counterclaims and offsets TEI now wishes to assert.  Plaintiffs, on the other hand, contend the statute of limitations was not tolled until TEI filed its Motion to Allow Offsets on December 13, 2005.

Underlying this statute of limitations issue is the parties' dispute as to whether TEI properly pled and preserved its counterclaims or offsets as to both the named Plaintiffs and all the class members now involved in this case.  Plaintiffs argue TEI pled the counterclaims or offsets against only the named Plaintiffs, not the absent class members.  Therefore, Plaintiffs argue TEI has waived its right to assert any counterclaims or offset.  As would be expected the issue is not that simple.

It is true that Plaintiffs have consistently prosecuted this case as a class action since the date of the original Complaint. In its original Answer and Counterclaims filed on May 6, 1996, TEI expressly pled its counterclaims against each of the named Plaintiffs.  However, TEI made no allegations asserting any

counterclaims or offsets against any of the unnamed and absent class members.

After the Order of class certification was entered on June 9, 1999, Plaintiffs filed a Second Amended Complaint on July 8, 1999, restating their claims individually and on behalf of all class members.  TEI's Answer to Second Amended Complaint and its Amended Answer to Second Amended Complaint filed July 21, and July 27, 1999, respectively, merely incorporated by reference its May 6, 1996 Answer and Counterclaims.  Therefore, despite the certification of this matter as a class action lawsuit, from a pleading standpoint, TEI did not formally plead any counterclaims or offsets against the former absent class members, who are the now present class members.

Finally, the Notice of Class Action sent out in this case made no mention of any possible counterclaims or offsets against the class members.[7]  The unnamed class members have not been provided formal notice of any counterclaims or offsets TEI pled against them, or which TEI now seeks to assert against them by way of its Motion to Allow Offsets.

By way of its June 2, 2006 Order the Court has already concluded that from a procedural standpoint the claims administration phase of this action can be an appropriate time to assert counterclaims, subject to a review of the merits of, and

_____

[7]June 16, 2005 Order Regarding Class Notice, Ex. C.

ORDER – PAGE 8

defenses to those counterclaims.  *See Allapattah Services, Inc. v. Exxon Corp.*, 157 F. Supp. 2d 1291, 1322-23 (S.D. Fla. 2001) (noting that the resolution of counterclaims during the damages phase is appropriate and can be made on a "class member-by-class member basis").  In *Allapattah*, the court allowed the claims as set-offs, or permissive counterclaims, "filed solely to defeat or diminish the amount of a class member's recovery, but [which] may not exceed the amount of the [plaintiffs'] claim[s]."  *Id.* at 1322.  The court required the set offs to be determined by a special master under Fed. R. Civ. P. 53.  *Id.* at 1323.

On appeal, the Eleventh Circuit Court of Appeals agreed as to the timing for the assertion of set-offs or counterclaims against absent class members.  The damages phase of a class action case following the class members' submission of claims is the appropriate time for a defendant to raise such claims.  *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1259-60 (11th Cir. 2003).  The law does not require a class action defendant to have previously asserted set-off claims in its answer prior to the claims administration phase of the class action.  *Id.* at 1259.  Rule 13 of the Fed. R. Civ. P. governing pleading requirements for counterclaims is inapplicable in the class action context since the rule by its terms applies only to opposing parties.  *Id.* at 1259 n.14.

The procedural posture of this case raises some significant

issues.  Although this is the appropriate time for the assertion
of TEI's counterclaims or offsets, the class members have not
previously had any notice of such claims.  Therefore, as
discussed below the Court is presently faced with the issues of
what temporal limitations are imposed on TEI's claims, and how
TEI's counterclaims or offsets should be presented in this case
for resolution.

### 1.  Defensive Recoupment

### a.   Characterization of Claims

A preliminary issue of significance is whether to
characterize TEI's claims as counterclaims seeking affirmative
relief, or as set offs asserted defensively.  The proper
characterization is critical to the resolution of other matters,
most importantly the application of the pertinent statutes of
limitations.  TEI maintains its recovery under the claimed
"offsets" is defensive only and will be limited to the extent of
Plaintiffs' recovery of damages.[8]

The courts have routinely discussed the appropriate
application of statutes of limitations to counterclaims for
affirmative relief, versus matters pled as an affirmative
defense, such as recoupment to offset the amount of a plaintiff's
recovery.  *City of Saint Paul, Alaska v. Evans*, 344 F.3d 1029

---

[8]Def.'s Response to Pls.' Initial Br. at 3 (September 15,
2006).

ORDER – PAGE 10

(9ᵗʰ Cir. 2003).  The issue that inevitably arises is whether a particular claim or defense asserted by a defendant relates back to the date the plaintiff's complaint is filed for purposes of determining whether the claim or defense is barred by a statute of limitations.  *See e.g. Egeland v. City Council of Cut Bank*, 245 Mont. 484, 803 P.2d 609 (1991).  The courts have emphasized a statute of limitations is intended as a shield against stale claims of liability, but it is not intended as a sword to bar valid defensive matters.  *City of Saint Paul*, at 1033-34.  Therefore, "courts generally allow defendants to raise defenses that, if raised as claims, would be time-barred."  *Id*. at 1033.

One example of a time-barred claim which is allowed as a defensive matter is a claim for equitable recoupment which is "a defendant's right to seek reduction of damages based on the amount of a related claim."  *Id*. at 1034 n.7.  "A claim for recoupment that would otherwise be barred by the statute of limitations may be brought to defeat a claim arising out of the same transaction."  *Klemens v. Air Line Pilots Association, International*, 736 F.2d 491, 501 (9ᵗʰ Cir. 1984).  The courts recognize a distinction between "seeking affirmative recovery and having 'adjudicated questions raised by way of defense.'"  *City of Saint Paul,* at 1034 (quoting *U.S. v. Western Pacific Railroad Co.*, 352 U.S. 59, 73 (1956)).

> [T]he federal courts distinguish between those [claims]
> wherein the defendant seeks to reduce the amount a plaintiff

can recover, such as by recoupment, contribution, or indemnity, and those wherein the defendant is seeking affirmative relief. [...]  Where the claim of the defendant is an affirmative independent cause of action not in the nature of a defensive claim, the defendant must comply with the applicable statute of limitations.

*U.S. for Use of Brothers Builders Supply v. Old World Artisans, Inc.*, 702 F. Supp. 1561, 1569 (N.D. Ga. 1988) (citations omitted).

Accordingly, for purposes of establishing the temporal limits on TEI's claims the Court must determine whether the items TEI asserts are defensive recoupment matters, or whether they are more properly treated as affirmative claims for relief.  In this regard, courts cannot simply rely on a party's characterization of its own claims to avoid a statute of limitations bar.  *City of Saint Paul*, 344 F.3d at 1035.

The characterization of a matter as an affirmative or defensive claim depends on the parties' roles, or litigation posture, in the litigation as a whole.  *City of Saint Paul*, 344 F.3d at 1035.  It depends on whether a party is the aggressor or instigator in the action as the one who first "disturbed the equilibrium between the parties."  *Id*. (quoting *118 East 60th Owners, Inc. v. Bonner Properties, Inc.*, 677 F.2d 200, 205 (2nd Cir. 1982)).  If a party is the aggressor the courts will not permit the party to avoid a statute of limitations bar to time-barred claims that are simply masquerading as defenses.  *Id*. at 1035-36.

ORDER - PAGE 12

In the *City of Saint Paul*, the City initially filed its claims as the plaintiff, but the court determined those claims were barred by the statute of limitations.  *Id*. at 1031.  However, because the defendants had asserted counterclaims, the City reasserted its time-barred claims as defenses to the counterclaims.  *Id*.  Under those circumstances even though the City replead its claims defensively, the court concluded the City, as the aggressor in the litigation, could not simply recast its time-barred claims as defenses to evade the statute of limitations.  *Id*. at 1035.

Under the circumstances of this case, the Court cannot characterize TEI as the initial aggressor.  Clearly this action was initiated by Plaintiffs, not TEI, and TEI's role or posture in this litigation as a whole is as a "defendant".  As such, TEI is not the party who first disturbed the equilibrium between the parties.  344 F.3d at 1035.

Furthermore, TEI represents its recovery from any Plaintiff will not exceed the amount of such Plaintiff's claim.  *See Allapattah*, 157 F. Supp. 2d at 1322 (defining permissible defensive set-offs in a class action as matters "filed solely to defeat or diminish the amount of a class member's recovery, but may not exceed the amount of the claim").  Therefore, in part on the basis of TEI's representation as to the extent of the recovery it seeks the Court finds TEI may assert its claims as

ORDER - PAGE 13

defensive recoupment, if the particular claim, as detailed below, satisfies the "same transaction requirement" essential to a claim of recoupment.

<u>**b.    Same Transaction Requirement**</u>

To allow TEI to proceed with each of its recoupment claims, the Court must determine whether they arise out of the same transaction as Plaintiffs' claims.  "[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded."  *Bull v. U.S.*, 295 U.S. 247, 261 (1935).  *See Klemens*, 736 F.2d at 501 (allowing recoupment claim as not barred by the statute of limitations because it arose out of the same transaction as the plaintiff's claim).

To determine whether a recoupment counterclaim arises out of the same transaction courts in the Ninth Circuit generally apply the logical relationship test in Fed. R. Civ. P. 13(a).  *U.S. v. Iron Mountain Mines, Inc.*, 952 F. Supp. 673, 678 (E.D. Cal. 1996).

> A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant.

*In re Pegasus Gold Corp.*, 394 F.3d 1189, 1196 (9th Cir. 2005). Stated differently, the courts

determine whether a claim arises out of the same transaction

or occurrence by analyzing "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."

*Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995).

Plaintiffs' successful claims in this case established that TEI failed to disclose to Plaintiffs in writing that it would deduct a 6% insurance surcharge from gross revenue before Plaintiffs' compensation was calculated.  Generally speaking, Plaintiffs' recovery in this case is of additional compensation due to them in light of the improper 6% deduction.

TEI now presents three categories of counterclaims: (1) offsets for negative balances in Plaintiffs' settlement accounts; (2) offsets for compensation Plaintiffs received in excess of the percentage allowed under the lease agreements; and (3) offsets for indemnification some Plaintiffs owe to TEI for incidents or accidents caused by those Plaintiffs.

## (1)  Negative Balances

TEI explains the settlement accounts were running balances of each Plaintiffs' earnings and expenses, and some of those accounts have negative balances reflecting amounts Plaintiffs owe TEI.  The negative balances emanate, in essence, from monies advanced to a particular class member in anticipation of future compensation.  The parties' lease agreements state that if a negative balance exists in those accounts then Plaintiffs "authorize TEI to apply any amounts which [Plaintiffs are]

ORDER – PAGE 15

entitled to receive from TEI to amounts owed to TEI."[9]

Therefore, the Court concludes Plaintiffs' compensation claims and TEI's negative balance claims arise from the same operative facts.  Plaintiffs' additional earnings to which they are entitled through this lawsuit theoretically are part of each Plaintiff's settlement account against which the negative balance expenses are deducted and, therefore, arise out of the same accounting transactions.  Pursuant to the lease agreement provision quoted above, the aggregate core of facts upon which the Plaintiffs' claims for compensation rest activates additional legal rights TEI has to offsets, which rights are otherwise dormant without Plaintiffs' additional compensation and this offset opportunity.  Therefore, these offset claims can proceed as recoupment claims from the same transactions.

### (2)  Excess Compensation

The parties' lease agreements specified certain percentage amounts of gross revenue for the calculation of Plaintiffs' compensation depending upon the type of load the Plaintiffs hauled on a particular occasion.  However, sometimes TEI would negotiate a higher price for Plaintiffs' compensation to entice them to take certain loads they might otherwise decline.  Pursuant to prior rulings in this case strictly enforcing the terms of the lease agreements, TEI now seeks to enforce the

---

[9]TEI's Brief at 4 (August 31, 2006).

specific compensation percentages set forth in the lease agreements, resulting in a conclusion that Plaintiffs have been over-compensated for certain loads they hauled.  TEI argues that pursuant to the account offset provision of the lease agreement quoted above TEI is permitted to apply amounts for compensation it owes to Plaintiffs to satisfy excess amounts of overpaid compensation Plaintiffs owe to TEI.  The Court is satisfied that TEI's excess compensation claims arises out of the same operative facts as Plaintiffs' claims for additional compensation. Therefore, this offset claim can proceed as a recoupment claim.[10]

### (3)  Indemnification

TEI argues that pursuant to three provisions of the parties' lease agreements Plaintiffs are obligated to indemnify TEI for damage claims TEI has paid to third parties for incidents or accidents caused by Plaintiffs.  The Court finds the operative facts of each indemnification counterclaim would necessarily include the facts of the alleged other incidents or accidents. Such indemnification claims will require a review of the facts of those "other incidents", and will require a determination of whether those incidents were caused by Plaintiffs and whether Plaintiffs are obligated to indemnify TEI for those incidents.

In contrast, the operative facts supporting Plaintiffs'

_____

[10]Plaintiffs concede TEI's excess compensation claims may be valid.  (Pls.' Initial Br. at 7 (September 1, 2006).)

claims are different.  Such operative facts basically include the
compensation percentage set forth in the lease agreement, TEI's
non-disclosure of the 6% figure constituting the insurance
surcharge deduction, and the calculation of the proper recovery
of compensation to which Plaintiffs are entitled had the 6%
insurance surcharge not been deducted from gross revenue.  Those
essential facts are not logically connected to the facts of TEI's
indemnification claims.  Although TEI's claims arise from the
same lease agreement on which Plaintiffs' claims are based, the
Court concludes that fact, by itself, is not sufficient to
support a same-transaction conclusion.

Accordingly, the Court concludes TEI's indemnification
claims do not arise out of the same transactions as Plaintiffs'
claims and cannot proceed as recoupment claims.

### 2.  Affirmative Relief - Indemnification Counterclaims

Since TEI's indemnification counterclaims cannot proceed as
recoupment claims, what remains to be determined is whether TEI
should be allowed to assert these claims for indemnification as
counterclaims seeking affirmative relief.  Pursuant to the June
2, 2006 Order in this case the Court has, from a procedural
timing standpoint, recognized the conceptual right TEI may have
to plead counterclaims against the class members at this time.
However, the June 2 Order did not expressly grant TEI the right,
as a matter of law, to actually file and prosecute each of the

ORDER - PAGE 18

three categories of counterclaims TEI desires to assert.  As
described above, TEI's counterclaims have never been formally
pled against the unnamed class members in this action.
Therefore, the Court will construe TEI's December 13, 2005 Motion
to Allow Offsets as a motion to amend its pleading pursuant to
Fed. R. Civ. P. 15 to add its indemnification counterclaims
against appropriate class members to the formal pleadings in this
case.

Although Fed. R. Civ. P. 13 generally governs a party's
right to assert counterclaims (either compulsory or permissive),
Rule 13 is not applicable in a class action lawsuit because
absent class members are not opposing or litigating adversaries
as contemplated by the rule.  *Allapattah Services, Inc. v. Exxon
Corp.*, 333 F.3d 1248, 1259 n.14 (11th Cir. 2003) (quoting *Owner-
Operator Independent Drivers Association v. Arctic Express, Inc.*,
238 F. Supp. 963, 967 (S.D. Ohio 2003)).  *See also Donson Stores,
Inc. v. American Bakeries Co.*, 58 F.R.D. 485, 489 (S.D.N.Y.
1973).  Therefore, the decision as to whether to allow a class
action defendant to assert a counterclaim is within the
discretion of the court.  *Allapattah Services,* Inc., 333 F.3d at
1259 n.14.

Even if the Court were to apply Rule 13 to TEI's
indemnification counterclaims, the Court remains vested with
discretion as to the counterclaims should be allowed.  Since

ORDER - PAGE 19

TEI's indemnification counterclaims do not arise out of the same transaction as Plaintiffs' claims as discussed above, such counterclaims could not be characterized as compulsory counterclaims, and would instead be deemed permissive counterclaims under Fed. R. Civ. P. 13(b).  As such, the Court still retains some discretion to disallow a permissive counterclaim if it would unduly complicate the litigation.  *SEC v. Republic Nat. Life Ins. Co.*, 383 F. Supp. 436, 438 (S.D.N.Y. 1974); *Rosemont Enterprises, Inc. v. Random House, Inc.*, 261 F. Supp. 691, 698 (S.D.N.Y. 1966).

Finally, even if the Court were to consider TEI's amendments to its counterclaims under Fed. R. Civ. P. 13(f), which permits an amendment for an omitted counterclaim, a court should not permit such amendment under Rule 13(f) where undue prejudice would result.  *Triad Electric & Controls, Inc. v. Power Systems Engineering, Inc.*, 117 F.3d 180, 192 (5th Cir. 1997).  A district court has discretion as to whether to allow an amended counterclaim under Rule 13(f).  *Ralston-Purina Co. v. Bertie*, 541 F.2d 1363, 1367 (9th Cir. 1976).

As discussed above TEI has explained the nature of the indemnification counterclaims as damage claims TEI has paid to third parties on behalf the Plaintiff class members for incidents or vehicle accidents caused by the Plaintiff class members.[11]

---

[11]TEI's June 22, 2006 Report on Specific Counterclaims at 4.

Although TEI insists the Plaintiff class members' liability for these third party claims can be presumed on the basis it vigorously challenged such liability and it would not have paid the claims if it were not satisfied such liability existed, the Court cannot simply rely on TEI's presumption of liability.[12] Instead, the validity of these indemnification counterclaims will be subject to challenge on a case-by-case basis.  By TEI's count there are 129 class members against whom it would be asserting these counterclaims.[13]  Therefore, there would potentially be 129 mini trials on those class members' liability for the underlying damage claims supporting the indemnification claims.  The necessary proceedings for the resolution of such 129 mini trials would undeniably unduly complicate this litigation.

The Court further concludes the undue complication these counterclaims would inevitably cause would also prejudice the class members.  This action has been proceeding in this Court for over 11 years.  The class members' claims for relief have been fully resolved.  All the necessary information supporting the calculation of the class members' additional compensation has been provided to the Court and is verified by TEI, the parties do not dispute the formula for the calculation of such additional compensation, and the District Court has entered judgment in

---

[12] *Id.*

[13] *Id.* at 5.

ORDER - PAGE 21

favor of the class.  In essence, there is nothing left to do but for TEI to write the check, subject to the likelihood of an appeal in this case.

Therefore, the Court concludes the presentation of TEI's indemnification counterclaims in this action will unduly complicate this already protracted litigation.  TEI will not be permitted to amend their pleading to add such counterclaims in this action.  Its option, of course, is to pursue the counterclaims in separate independent lawsuits it can file against individual class members.

### B.  Waiver and Abandonment as to Counterclaims Against Named Plaintiffs

The named Plaintiffs argue TEI has either waived or abandoned the counterclaims pled against them for two reasons. TEI removed the offset defense from its most recent pleading, and it failed to present such claims at the trial conducted in this case.

The Court finds the record reflects that TEI removed its affirmative defense for offsets from its Answer to Second Amended Complaint and it Amended Answer to Second Amended Complaint filed July 21, and July 27, 1999, respectively.  However, the Court concludes such conduct is not significant and does not constitute a waiver or abandonment.  An offset is not a specific affirmative defense identified under Fed. R. Civ. P. 8(c) as one which must be affirmatively pled.  The matters were sufficiently pled as

ORDER – PAGE 22

counterclaims against the named Plaintiffs through TEI's May 6, 1996 Answer.

With regard to the trial in this case, it is undisputed that TEI did not present its counterclaims during the 2002 trial. Plaintiffs argue such conduct constitutes a waiver of the claims. However, "[a] waiver is the intentional and voluntary relinquishment of a known right, claim or privilege." *Collection Bureau Services, Inc. v. Morrow*, 87 P.3d 1024, 1027-28 (Mont. 2004); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Plaintiffs have not cited to any evidence suggesting TEI intentionally and voluntarily relinquished its counterclaims when it did not present them at trial.

To the contrary, the Court appreciates that TEI may have had a reasonable basis for waiting until this late date to assert its counterclaims. TEI's liability for the named Plaintiffs' claims and the class claims were bifurcated from the issue of damages for purposes of the trial; specifically, the 2002 trial in this case proceeded as to only the issue of TEI's liability to the named Plaintiffs. Such procedure was based on the Honorable Richard F. Cebull's June 9, 1999 Order in which the Court bifurcated liability from damages. Based on the type of class action Plaintiffs sought to certify, the Court deemed "it more logical to only determine TEI's liability at this point in time[,]" and it reserved the issue of monetary relief for future

ORDER - PAGE 23

proceedings if liability were resolved in Plaintiffs' favor.[14]

Then, Judge Cebull's November 1, 2000 Revised Scheduling Order clarified as follows:

> This case will be tried to the Court sitting without a jury on the issues of injunctive and declaratory relief and liability for monetary damages or restitution. [] The issue of damages or restitution as to all Plaintiffs shall be tried in a separate proceeding, if necessary.[15]

Therefore, based on the bifurcation ordered by the Court, TEI understandably did not present its counterclaims for resolution during the 2002 trial.

Furthermore, the Court also recognizes that procedurally it might have been premature for TEI to assert offsets to the named Plaintiffs' damages before those damages were determined. Plaintiffs' damages were not resolved at the 2002 trial.

## C. Further Procedures

By this Order, the Court will allow TEI to present its recoupment offsets by way of an appropriate motion, or motions, together with supporting evidence.  However, under the circumstances of this case the Court will strictly limit the time which TEI will have to submit its offsets.

The Court appreciates Plaintiffs' concerns as to the delay inherent in TEI's assertion of its claimed offsets as this juncture.  As discussed above, TEI removed its offset affirmative

---

[14]June 9, 1999 Order at 29.

[15]November 1, 2000 Order at 2.

defense from its most recent pleading.  TEI also provided limited discovery responses relative to the offsets it now wishes to assert.  In fact, at least as far as the Court's record is concerned, TEI has not actively pursued its offsets until December 13, 2005, when it filed the pending Motion to Allow Offsets.  All of these circumstances understandably led Plaintiffs to believe TEI had no intention of asserting and actively pursuing its offsets prior to December 13, 2005.

On the other hand, for the reasons discussed above relative to the issues of waiver and abandonment, and based on the permissible timing for counterclaims against class members recognized by the June 2, 2006 Order, the Court appreciates that TEI may have had a reasonable basis in law and in fact for waiting until this late date to assert its counterclaims.

Nevertheless, to date TEI has had 11 years to prepare for the presentation of its offsets since this case was filed in 1995, 3 years since the Court's February 3, 2003 liability ruling, and 2 years since the Court's July 8, 2004 ruling on the damages to which the named Plaintiffs are entitled.  Therefore, the Court will establish a limited time frame within which TEI will be required:  (1) to identify the offsets it advances against individual class members, and (2) provide the Plaintiffs with an itemized statement with respect to each claimed offset, supported by appropriate documentation and affidavits.

ORDER - PAGE 25

Based on the foregoing, the Court hereby enters the following:

**ORDER**

The motion of TEI to allow offsets is **GRANTED** to the extent that TEI may proceed with its "negative balance" and "excess compensation" claims as recoupment offsets, as the Court finds such claims are not subject to a statute of limitations bar.

However, TEI's "indemnification" counterclaims are claims for affirmative relief and may not proceed as recoupment offsets. Instead, the Court construes TEI's Motion to Allow Offsets as a motion to amend its counterclaims under Fed. R. Civ. P. 15 to add its indemnification counterclaims to its pleadings.  The motion is **DENIED**, without prejudice to TEI's ability to file separate and independent lawsuits against those class members against whom it asserts those counterclaims.

All of TEI's counterclaims against the named Plaintiffs may proceed in this case.

On or before **December 15, 2006**, TEI shall present **all** of its counterclaims against the named Plaintiffs, and its negative balance and excess compensation offsets as to each individual class member through an appropriate motion or separate motions supported by an itemized statement, appropriate affidavits or verifications, and authenticated evidence.

**IT IS FURTHER ORDERED** a status conference is set for **January**

ORDER - PAGE 26

**3, 2007, at 10:00 a.m.** to be held in the undersigned U.S.

Magistrate Judge's chambers.  The purpose of the conference is to

establish a final schedule for resolution of the individual

claims of recoupment, and as to the named Plaintiffs, all the

individual counterclaims.

    DATED this __30th__ day of October, 2006.


                      _/s/ Jeremiah C. Lynch_____
                      Jeremiah C. Lynch
                      United States Magistrate Judge