**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

_____

BRYCE T. STRICKLAND; DAVID T.         CAUSE NO. CV 95-62-M-JCL
SHUMATE; LINDA SHUMATE;
DEPRESS JOHNSON; NOBLE DANIEL
CLAY, SR.; GORDON SALMONS; and
JONAS PRICE,

                                  ORDER

                Plaintiffs,

       vs.

TRUCKERS EXPRESS, INC.

                Defendant.
_____

## I.  BACKGROUND

The named Plaintiffs represent a class of individuals who are owners/operators of trucks leased to Defendant Truckers Express, Inc. ("TEI") pursuant to a standard form lease agreement governed by Montana contract law, but subject to certain federal truth in leasing regulations.  The Plaintiffs instituted suit claiming TEI violated the federal regulations, breached the lease agreements, and otherwise committed fraud when it wrongfully deducted a six percent insurance surcharge from the compensation due the class members under the terms of the standard form agreement.

ORDER - PAGE 1

After a non-jury trial on the issue of liability, the Court found TEI liable for violating 49 C.F.R. § 376.12(g) and breaching the standard form lease agreement as a result of its violations of 49 C.F.R. §§ 376.12(g).  On November 6, 2006, the Court entered judgment against TEI which entitled the named Plaintiffs and class members to damages for amounts wrongfully deducted from their compensation as an insurance surcharge.  The amount of monetary relief to which the class, as a whole, is entitled is approximately 5.1 million dollars.  This approximated amount, however, may be subject to possible, but as of yet unresolved, recoupment offsets and counterclaims TEI has been allowed to advance.[1]

The case is presently before the Court upon motion of the Plaintiffs requesting an award of attorneys fees.  The motion has been fully briefed and argued before the Court on January 3, 2007.  Having considered the parties' respective arguments, the Court finds the Plaintiffs, as the prevailing party in this litigation, are entitled to an award of attorneys fees under the fee-shifting provision of 49 U.S.C. § 14704(e).  As detailed below, the amount of the award shall be calculated in accordance with the lodestar method without either an upward or downward

---

[1] In addition to the imposition of liability for monetary damages, the Court had previously granted the Plaintiffs' request for injunctive relief requiring TEI to conform its standard form lease agreement to pertinent federal regulations.

ORDER - PAGE 2

adjustment in the lodestar figure.

## II.  DISCUSSION

### A.  The Legal Basis for Attorneys Fees

Analysis must begin by accurately identifying the legal basis upon which the award of attorneys fees is grounded.  This identification is necessitated by the fact there exists two independent legal bases that support an award - one founded upon a federal fee-shifting statute, the other based in state contract law.  In this regard, 49 U.S.C. § 14704(e) provides as follows:

> **(e) Attorney's fees.**--The district court shall award a reasonable attorney's fee under this section.  The district court shall tax and collect that fee as part of the costs of the action.

Paragraph fifteen of TEI's standard form lease agreement, in turn, provides as follows:

> In the event of litigation to enforce the terms of this agreement, the prevailing party shall be entitled to a reasonable attorneys' fee and costs of suit expended on such litigation.[2]

It is important to note that in finding TEI liable for breach of contract, the Court relied upon the principle of law recognizing that all laws existing at the time and place of the making of a contract are incorporated into the contract as a matter of law.  *See, Farmers & Merchants' Bank of Monroe v.*

---

[2] Pursuant to paragraph seventeen of the standard form lease agreement, the class members and TEI agreed Montana substantive law governed both the "interpretation and performance" of the lease agreement.

ORDER - PAGE 3

*Federal Reserve Bank of Richmond*, 262 U.S. 649, 660 (1923); *see also Wiard v. Liberty Northwest Ins. Corp.*, 318 Mont. 132, 137-38, 79 P.3d 281, 285 (2003).  Accordingly, because TEI's deduction of the insurance surcharge violated the requirements of 49 C.F.R. § 376.12(g), imposition of the surcharge necessarily constituted a breach of the lease agreement.[3]

Subsequent to trial, the Court granted Plaintiffs' motion for an interim award of attorneys fees.  At that time, the Court expressly noted the award was predicated on the Plaintiffs having prevailed upon their federal regulatory claim and were thus properly considered the "prevailing party" under federal law for purposes of applying 49 U.S.C. § 14704(e), the federal fee-shifting statute.

In the present motion requesting a final award of attorneys fees, the Plaintiffs again base their request on 49 U.S.C. § 14704(e), the federal fee-shifting statute.  The Plaintiffs acknowledge the calculation of attorneys fees is to be accomplished in accordance with federal decisional law that has evolved in the application of federal fee-shifting statutes.  *See*

---

[3] As noted, the Plaintiffs pursued various state law claims including claims for breach of contract based on violations of 49 C.F.R. §§ 376.12(d), (g), (h), and (j), a cause of action for fraud, and a claim regarding a "risk management fee."  The Plaintiffs ultimately succeeded only on the breach of contract claim for a violation of 49 C.F.R. § 376.12(g), since they dropped the risk management fee claim and the Court found against them on the other state law claims.

ORDER – PAGE 4

*e.g., Hensley v. Eckherhart,* 461 U.S. 424 (1983); *Blum v. Stenson*, 465 U.S. 886 (1984); *Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041 (9th Cir. 2000).  Specifically, Plaintiffs concede attorneys fees are to be calculated in accordance with the hybrid lodestar/multiplier method, wherein the Court first determines the lodestar and then proceeds to determine whether an adjustment, either upward or downward, is appropriate based on factors not subsumed in the initial calculation of the lodestar.

The Plaintiffs submit the appropriate lodestar amount for attorneys fees is $878,871.25.  The Plaintiffs, however, also argue that an enhancement of the basic lodestar is justified under the circumstances of this case.  The Plaintiffs request the Court to utilize a multiplier of 1.8 which would yield an award of fees in the amount of $1,581,968.25.

The Supreme Court has left "very little room" to maneuver for those seeking an enhancement of the basic lodestar.  *Stewart v. Gates*, 987 F.2d 1450, 1453 (9th Cir. 1993) (*citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986)).  The applicant for an enhancement bears a "heavy" burden to overcome the "strong presumption" that the basic fee is reasonable.  *Stewart*, 987 F.2d at 1453.

Apparently recognizing the extremely limited grounds upon which a court may enhance the basic lodestar, the Plaintiffs claim entitlement to a multiplier based upon *Wing v. Asarco*, 114

F.3d 986 (9th Cir. 1997).  Plaintiffs read *Wing* to stand for the proposition that "when an independent basis for fees exists based on contract, the Court may consider adjustments to the lodestar amount based on the result obtained, the skill of the attorneys, the risk involved, and other factors" including the "undesirability of the case and the customary contingent award."[4]

*Wing*, however, does not stand for the broad proposition advocated by the Plaintiffs.  In essence, the Plaintiffs argue that the Court may ignore the limitations otherwise placed upon the discretion of the Court to enhance the basic lodestar, because they also "prevailed" upon their pendent state breach of contract claim which provided an alternate basis for an award of attorneys fees.  By way of their argument, the Plaintiffs are, at bottom, requesting the Court to enhance the basic lodestar figure by using a contingency-fee multiplier.

In *City of Burlington v. Dague,* 505 U.S. 557 (1992), the Court made clear that in applying a federal fee-shifting statute, risk or contingency of non-recovery is not a basis for an upward enhancement of the lodestar.  *Dague*, 505 U.S. at 567.  The prevailing party simply cannot recover the risk of loss accepted in undertaking the litigation.  *Dague,* 505 U.S. at 565.  In mistaken reliance upon *Wing,* the Plaintiffs suggest that despite *Dague* the Court may consider the contingent nature of a fee

---

[4]Pls.' Brief at 9 and 14.

agreement in awarding attorneys fees pursuant to a federal fee-shifting statute, if an alternate basis for fees exists in contract.  The Plaintiffs' argument impermissibly attempts to meld federal decisional law controlling an award of attorneys fees under fee-shifting statutes with state substantive law controlling an award of attorneys fees in a breach of contract action.  As explained below, *Wing* does not stand for the proposition the Plaintiffs assert, and *Wing* did not involve consideration of a contingency fee agreement.

In *Wing* the Ninth Circuit reviewed the district court's award of attorneys' fees following the parties' settlement of a class action lawsuit against ASARCO.  As part of the settlement the parties detailed their agreement as to ASARCO's payment of the plaintiffs' attorneys' fees.  ASARCO agreed to pay the attorneys' fees directly out of its own pocket, rather than from the compensation awarded to the class members.  *Wing*, 114 F.3d at 988.  The parties contractually agreed that ASARCO would pay a lodestar figure of approximately $4 million, and they agreed they could each argue for an appropriate adjustment or multiplier to be applied by the court in its discretion.  *Id*.

Following the court's approval of the class action settlement the plaintiffs requested the court enhance the lodestar figure to equal 25% of the $67.5 million agreed settlement amount.  *Id*.  Alternatively, they requested the court

enhance the lodestar by a multiplier of 3.8.  *Id*.  After considering the class plaintiffs' request, the court applied a multiplier of 2 to the $4 million lodestar and it awarded $8 million in fees.  *Id*.  Of critical importance to the court's application of the multiplier was the fact class counsel had a continuing ten-year obligation to administer the distribution process and oversee a medical monitoring program and a property value assurance program.

Upon review, the Ninth Circuit noted that the fee dispute arose out of the parties' contract, i.e. the settlement agreement.  *Wing*, 114 F.3d at 988.  The only constraint the contract imposed on the trial court's discretion was the requirement that the fee ultimately awarded must be reasonable.  *Id*.  Therefore, the Ninth Circuit simply reviewed the fee award under the "abuse of discretion" standard to determine whether it was reasonable under all the circumstances of the case.  In considering the reasonableness of the fee award, the Ninth Circuit approved of the district court's reliance on various factors to conclude the award was reasonable and supported the multiplier awarded by the district court.  *Wing*, 114 F.3d at 989.

The court also approved of the district court's efforts to "cross-check" its fee award by comparing it to the class recovery.  It supported the enhancement by noting the $8 million fee award equaled only 12% of the class recovery and, therefore,

ORDER - PAGE 8

was a "reasonable" fee award under the parties' contractual
agreement for fees.  *Id.* at 990.[5]

     After studied consideration, the Court concludes *Wing* does
not stand for the broad proposition advanced by the Plaintiffs
that in awarding attorney fees under a fee-shifting statute a
court may consider a contingency fee agreement to enhance the
lodestar whenever an alternate basis for a fee award exists in a
state law based contract claim.

     Again, the Plaintiffs have requested the Court calculate
their fee award pursuant to federal law, not state law.  As
established above, the legal authority for the fee award in this
case is the federal fee-shifting statute applicable in this case,
not state law.  *Dague* prohibits this Court from considering any
contingency fee agreement in a federal fee-shifting statute case,
and *Wing* does not modify that prohibition.  Subsequent to *Wing*,
the Ninth Circuit has confirmed that "[a] district court may not
rely on a contingency agreement to increase or decrease what it
determines to be a reasonable attorney's fee."  *Van Gerwen v.
Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

_____

     [5]The court expressly declined to decide under the
circumstances of the case whether *Dague* prohibited it from
considering a contingency fee agreement in its adjustment to the
lodestar.  *Wing*, at 989.  The percentage figure the court used for
comparison was not a contingency fee agreement percentage.  Rather,
the court found that the fee it awarded was only 12% of the class
recovery which merely supported its conclusion that the fee award
was "reasonable."  *Id.* at 990.

ORDER – PAGE 9

Therefore, the Court will not consider any contingency fee agreement the Plaintiffs may have, or any associated risk their attorneys accepted.

Although the Plaintiffs could have elected to have the award of attorneys fees calculated under state substantive law, the Plaintiffs have not requested nor argued that the calculation of attorneys fees should be made pursuant to state law. *See e.g.*, *Mangold v. California Public Utilities Comm'n.*, 67 F.3d 1470, 1478 (9th Cir. 1995).

The propriety of awarding and calculating attorneys fees in a federal lawsuit based on state substantive law is governed by state law. *See, Mangold*, 67 F.3d at 1478; *Champion Produce Inc. v. Ruby Robinson Co.*, *Inc.*, 342 F.3d 1016 (9th Cir. 2003).  This rule applies when the Court is exercising jurisdiction over a state claim, pursuant to either its general diversity jurisdiction or its supplemental jurisdiction under 28 U.S.C. § 1367(a).  *Mangold*, 67 F.3d at 1478.  Recognition of this principle of law is important in the present context because, as acknowledged by the Plaintiffs, there exists no authority under either Montana statutory or decisional law which supports the suggestion that an award of attorneys fees in a breach of contract action may be enhanced by a contingency-fee multiplier. The Montana Supreme Court has endorsed a methodology for awarding and calculating attorneys fees in a breach of contract action

ORDER - PAGE 10

that is similar, in most respects, to the lodestar method.  *See Morning Star Enterprises, Inc. v. R.H. Grover, Inc.*, 247 Mont. 105, 113 (1991), and *Western Media, Inc. v. Merrick*, 232 Mont. 480, 483-484 (1988).  The Court has also stated the award can be based upon a contingency fee arrangement.  *See Frank L. Pirtz Const., Inc. v. Hardin Town Pump, Inc.*, 214 Mont. 131, 140 (1984).  But, the Court has not allowed a multiplier based on the existence a contingency fee agreement.

The Court now turns to resolve the Plaintiffs' motion for attorneys fees under 49 U.S.C. § 14704(e), the applicable federal fee-shifting statute and controlling federal decisional law.

## B.  Prevailing Party

Federal law requires that a plaintiff must be a "prevailing party" to recover an award of attorney's fees.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A prevailing party is one who has obtained an "enforceable judgment[] on the merits [... which] create[s] the 'material alteration of the legal relationship of the parties'[.]"  *Buckhannon Bd. And Care Home, Inc. v. West Virginia Dept. Of Health and Human Resources*, 532 U.S. 598, 604 (2001).  TEI concedes the Plaintiffs are the "prevailing parties" in this case for purposes of an award of attorney's fees pursuant to 49 U.S.C. § 14704(e), supra.

## C.  Reasonable Attorney's Fee Awards

Having established that the Plaintiffs are the prevailing

ORDER - PAGE 11

parties under § 14704(e), the Court has authority "to award a reasonable attorney's fee" to be determined on the facts of each case, and as guided by the consideration of various factors identified by the courts.[6]  *Hensley*, 461 U.S. at 429 and 430 n.3 (identifying factors to consider).  The Ninth Circuit first adopted the list of factors identified in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1976) as the "appropriate factors to be considered in the balancing process required in a determination of reasonable attorney's fees."  *See also Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1989).  The revised list of factors is as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation and ability of the attorneys; (9) the "undesirability" of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases.

*Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 n.2 (9th Cir. 2000).

Using the 11 factors as an underlying basis for determining the reasonableness of an attorney's fee award, the Ninth Circuit Court of Appeals has adopted "the hybrid lodestar/multiplier

---

[6]"A 'reasonable attorney's fee' is one that is 'adequate to attract competent counsel, but... [that does] not produce windfalls to attorneys."  *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (editorial changes in original).

approach used by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 [...] (1983)[]" for calculating attorney's fee awards. *Van Gerwen*, 214 F.3d at 1045.  The approach has two steps. First, the Court must determine the "lodestar" amount of fees which is a calculation of the number of hours reasonably expended in the litigation multiplied by a reasonable hourly rate. *Van Gerwen*, at 1045.  The party requesting an award of attorney's fees must present evidence, generally in the form of affidavits, of the number of hours worked and of the reasonable hourly rate. *Id.* at 1045, 1048.  If the documentation supporting the request is inadequate the Court can reduce the award of fees. *Hensley*, 461 U.S. at 433.

The preferred procedure is for the courts to take the 11 factors into consideration in its calculation of the lodestar amount.  The courts should first make any adjustment, if appropriate, to the reasonable number of hours and the reasonable hourly rate based on the list of factors. *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996), *as amended*, 108 F.3d 981 (9th Cir. 1997).

After calculating the lodestar figure, in the second step of the hybrid lodestar/multiplier approach a court has authority to use a "multiplier" to adjust the lodestar figure either up or down based on its consideration of the remaining factors which are not subsumed in the calculation of the lodestar figure. *Van*

*Gerwen*, 214 F.3d at 1045.   *See Hensley*, 461 U.S. at 434 n.9 (recognizing many factors are subsumed in the lodestar calculation).   The factors appropriate for consideration in the second step of the hybrid approach are discussed below.

The party moving for an award of fees bears the burden of establishing the reasonable amount of fees to which the party is entitled (*Hensley*, 461 U.S. at 437), and the burden of proving that an upward adjustment to the lodestar is warranted.   *Blum v. Stenson*, 465 U.S. 886, 898 (1984).

### D.  Calculation of the Lodestar

#### 1.  Reasonable Number of Hours

In determining the reasonable number of hours worked by attorneys in the litigation the Court should exclude hours not "reasonably expended."   *Van Gerwen*, 214 F.3d at 1045.   Counsel must exclude fees for any "hours that are excessive, redundant, or otherwise unnecessary[.]"   *Hensley*, 461 U.S. at 434.

In response to the Plaintiffs' motion TEI has identified numerous general and specific challenges to the Plaintiffs' billing records, and it objects to various hours claimed by the Plaintiffs' attorneys.   TEI explains it has not yet gone through all the records with a fine-toothed comb, and it has not identified all the hours it contends were unreasonably expended. Therefore, the Court will give TEI an opportunity to review all the billing records in more detail and identify for the Court

specific items to which it objects.  It will then be the Plaintiffs' burden to establish that the hours TEI challenges were reasonably expended.

## 2.  Reasonable Hourly Rate

Attorney's fees are calculated "according to prevailing market rates[]" in the relevant legal community.  *Blum*, 465 U.S. at 894.  Therefore, the Courts apply the market rate of attorneys practicing in the forum community, not the rates out-of-state counsel charge.  *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

The burden of establishing the applicable market rate is on the fee applicant.  Generally, this can be accomplished through affidavits, not only from the attorney performing the work but also from another attorney who can testify to the current market rate.  *Blum*, 465 U.S. at 895 n.11.  *Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1580 (11th Cir. 1990).

TEI complains that the Plaintiffs have not contemporaneously submitted an affidavit setting forth the current rates in Missoula.  Instead, the Plaintiffs base their fee application on the market rates which existed over 3 years ago as established by Jack Tuholske's 2003 affidavit, and adjust those rates for inflation to arrive at the current rates they request.  The Court agrees with TEI in that the Plaintiffs must submit evidence, presumably in the form of a revised affidavit, which sufficiently

ORDER - PAGE 15

establishes current market rates.  The Court will give the
Plaintiffs an opportunity to do so.[7]

The Plaintiffs also request that the Court calculate the
lodestar amount by applying current market hourly rates for all
hours their attorneys have expended over the entire 11-year
course of this litigation.  In situations where an award of
attorneys fees is delayed due to the numerous years a case is
involved in litigation, the Court has authority to compensate for
such delay by either (1) applying the attorneys' current hourly
rate to all hours billed during the litigation, or (2) using the
attorneys' historical rates and adding an appropriate interest
rate.  *In re Washington Public Power Supply System Securities
Litigation*, 19 F.3d 1291, 1305 (9th Cir. 1994) (involving a delay
of seven years in litigation); *see also Missouri v. Jenkins by
Agyei*, 491 U.S. 274, 284 (1989) (recognizing that application of
current rates is an appropriate adjustment for delay in payment).
"Full compensation requires charging current rates for all work
done during the litigation[.]" *In re Washington*, at 1305.
Accordingly, once the current market rate is properly established
in this case the Court will apply that rate to all hours billed

---

[7]The Court recognizes it has authority to use its own
experience with market rates to establish the appropriate hourly
rates to apply in this case.  *See Ilick v. Miller*, 68 F.Supp.2d
1169, 1176 (D. Nev. 1999).  However, in light of TEI's challenges
to the hourly rates the Court finds it is more appropriate to
require the Plaintiffs to submit affidavits.

by the Plaintiffs' attorneys to compensate them for the delay attended this protracted litigation.

The Plaintiffs also request that the Court apply the market rate in Birmingham, Alabama for the time billed by their Alabama attorney, Gerald Colvin.  This case was originally filed in Alabama in November of 1994.  In response, TEI moved to transfer venue to Montana on the basis Montana was the only proper venue for this case.  On May 17, 1995, Honorable Sam C. Pointer, Jr., Chief District Judge for the Northern District of Alabama, granted the motion to change venue, but did so on the basis of 28 U.S.C. § 1404(a) which allows a change of venue for the convenience of the parties and witnesses.  Judge Pointer found that TEI is a Montana corporation and, therefore, the witnesses and documents were all located in Montana.  Judge Pointer also noted that the lease agreement provided that it shall be governed by Montana law.  Finally, Judge Pointer found that although the named Plaintiffs are Alabama residents, the putative class the Plaintiffs claimed to represent was comprised of residents of numerous states.

As stated above, generally the market rates of attorneys in the forum community constitute the appropriate rates for calculating the lodestar.  The Ninth Circuit has left room, however, for the possibility that in light of a change of venue the Court has discretion to award fees based on the market rate

of the forum where the suit was originally filed if "special circumstances" exist. *Schwarz v. Sec. of Health and Human Services*, 73 F.3d 895, 907-908 (9th Cir. 1995) (citing *Polk v. New York State Dep't of Correctional Servs.*, 722 F.2d 23, 25 (2nd Cir. 1983)).

The Court finds special circumstances exist in this case warranting the application of the market rate in Birmingham, Alabama to Mr. Colvin's hours.  Mr. Colvin was employed by the named Plaintiffs to prosecute the case in Alabama.  Judge Pointer did not conclude that Alabama was an improper venue for this action, but pursuant to TEI's request he transferred it to Montana under the doctrine of *forum non conveniens*.  Therefore, due to matters beyond the Plaintiffs' control they were required to prosecute the case in Montana as opposed to their chosen forum.  Under those circumstances the Plaintiffs should not be penalized by a reduction to Mr. Colvin's rates.  The Court will apply the applicable Alabama rates to Mr. Colvin's hours once the Plaintiffs submit a proper affidavit to establish such rates.

For the reasons described above, the Court is without sufficient information to calculate the lodestar figure at this time.  In light of TEI's pending objections to the reasonableness of the hours expended, and in the absence of affidavits to support the current hourly rates, the Court has no basis for establishing the final lodestar figure.  Furthermore, without

ORDER - PAGE 18

that information the Court cannot assess the reasonableness of the lodestar through its consideration of the factors identified above.  Once the parties submit the necessary information the Court will proceed to calculate the lodestar and consider the various factors in assessing reasonableness.

### E.  Multiplier Adjustment to the Lodestar Amount

Although the Court cannot determine the lodestar figure at this time, the parties have made competing requests for an adjustment to the lodestar.  The Plaintiffs request the Court make an upward adjustment to the lodestar by a multiplier of 1.8. Conversely, TEI contends the Plaintiffs have obtained only limited success in this case.  Therefore, it requests that the Court reduce the Plaintiffs' fee award, either through its calculation of the lodestar or through a reduction to the lodestar.  Accordingly, the Court will proceed to consider whether the requested adjustments are warranted in this case.

The Plaintiffs set forth very limited grounds on which they base their request for the 1.8 multiplier.  In support of the upward adjustment they simply assert as follows:

> [W]hen an independent basis for fees exists based on contract, the Court may consider adjustments to the lodestar amount based on the result obtained, the skill of the attorneys, the risk involved, and other factors.  *Wing v. ASARCO*, [114 F.3d 986 (9th Cir. 1997)].  Here, a standard one-third contingency fee would result in an award of

approximately $1.5 million to $1.7 million[.][8]
They also contend the multiplier is appropriate based on an anticipated monetary judgment of over $5 million in damages.[9] Finally, they summarily state in their reply brief that the 1.8 multiplier they request is "proper in light of the substantial risk counsel have undertaken in this case, and the customary contingent fee awarded in this type of litigation."[10]

Based on the Plaintiffs' briefs, the Court finds that, in substance, the grounds for the Plaintiffs' request for an enhancement are (1) the risk of the customary contingency fee arrangement, and (2) the results they obtained.  The Court will review the request for enhancement on these limited grounds.[11]

The Court has authority to make an upward or downward adjustment to the lodestar amount. *Blum*, 465 U.S. at 897.  In doing so, however, the Court may consider only those of the 11 factors identified above which were not already subsumed into the Court's consideration of the lodestar calculation. *Van Gerwen*, 214 F.3d at 1045. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1989) (concluding that many of the factors

---

[8]Pls.' Br. at 9.  *See also* Pls.' Br. at 14 (asserting same basis for upward adjustment).

[9]Pls.' Br. at 14.

[10]Pls.' Reply at 4.

[11]As discussed above, the Court will not consider an enhancement based on a contingency fee agreement.

ORDER – PAGE 20

have been held subsumed into the lodestar calculation as a matter
of law).

The U.S. Supreme Court has identified the various factors
that are generally subsumed in the lodestar calculation and which
the Court is precluded from considering in making any adjustment
to the lodestar.  The Court generally should not adjust the
lodestar based on (1) the novelty and complexity of the issues,
(2) the quality of the attorney's representation of the client,
(3) the special skill and experience of counsel, (4) the results
obtained, or (5) the fact that the fee applicant has entered a
contingency fee agreement with his or her attorney.  *Blum*, 465
U.S. at 898-900; *City of Burlington v. Dague*, 505 U.S. 557, 567
(1992).  *See also Morales v. City of San Rafael*, 96 F.3d 359, 364
n.9 (9th Cir. 1996) (listing subsumed factors).

The lodestar figure is presumed to be the "reasonable"
amount of fees to be awarded.  *Blum*, 465 U.S. at 897; *Van Gerwen*,
at 1045.  It is only in "rare and exceptional cases" that the
Court may use a multiplier to adjust the lodestar upward or
downward, and the adjustment must be supported by specific
evidence in the record and detailed findings by the Court
explaining why the lodestar figure is either unreasonably low or
unreasonably high.  *Van Gerwen*, at 1045 (quoting *Pennsylvania v.
Delaware Valley Citizens' Council for Clear Air*, 478 U.S. 546,
565 (1986)).  *See also Hensley*, 461 U.S. at 437 (requiring the

ORDER - PAGE 21

court to "provide a concise but clear explanation of its reasons for the fee award[]").  The Court retains discretion in determining the amount of the attorney's fee to award.  *Hensley*, 461 U.S. at 437.

The Plaintiffs request that the Court enhance the lodestar figure based on the results they have obtained in this lawsuit. They contend the $5.1 million recovery for the class members in this case is an excellent result by any standard.  In response TEI requests a reduction to the fee award based on this factor.

Although generally the court's consideration of the results a party obtains is subsumed into the lodestar calculation, there are still some rare or exceptional situations where the court may consider the results in making an adjustment.  *Blum*, 465 U.S. at 900, *supra*.  The U.S. Supreme Court in *Hensley v. Eckerhart* has clarified how to weigh and assess the results.  The "amount involved and the results obtained" is just one of the factors a court may consider, but it can be "particularly crucial" in a case involving a mixture of successful and unsuccessful claims. *Hensley*, 461 U.S. 424, 434.  In a situation where a party prevails on only some of the claims for relief the court must address two questions:

> First, did the plaintiff fail to prevail on claims that were
> unrelated to the claims on which he succeeded?  Second, did
> the plaintiff achieve a level of success that makes the
> hours reasonably expended a satisfactory basis for making a
> fee award?

*Hensley*, at 434.  The Court explained that if the prevailing party was unsuccessful on claims that are unrelated to the claims on which the party succeeded, then no fees may be awarded for legal services performed on those unsuccessful claims.  *Id*. at 435.

The Court's considerations are different if the successful and unsuccessful claims are related.  More often than not, a plaintiff's case will assert "related claims" which "involve a common core of facts or will be based on related legal theories." *Hensley*, at 435.  In such a case counsel's time will be devoted to the litigation as a whole and cannot easily be divided on a claim-by-claim basis.  *Id*.  Accordingly, the court "should focus on the significance of the overall relief obtained[...] in relation to the hours reasonably expended on the litigation." *Id*.  If a plaintiff has obtained excellent results, counsel "should recover a fully compensatory fee."  *Id*.  Generally, a fully compensatory fee will simply be the lodestar amount, and the lodestar can be enhanced only in cases of "exceptional success".  *Id*.

If a plaintiff pursues several "related claims", but achieves "only partial or limited success," then the lodestar figure could be an excessive amount.  *Hensley*, at 436. Therefore, in a case involving related claims, some of which were successful and some of which were unsuccessful, the degree of

success obtained is the most crucial factor.  *Id*.  Even if the
relief obtained is significant, it may be "limited in comparison
to the scope of the litigation as a whole" and could support a
reduction to the fee award.  *Id*. at 440.  In those circumstances,
the court "should award only that amount of fees that is
reasonable in relation to the results obtained."  *Id*.  In either
case, whether the court enhances or reduces the lodestar it must
"make clear that it has considered the relationship between the
amount of the fee awarded and the results obtained."  *Id*. at 437.

TEI asserts the Plaintiffs' claims included at least one
"unrelated" claim, which was their risk management fee claim.
Plaintiffs advise they have culled their attorneys' billable
hours to eliminate any time spent on the risk management fee
claim.  With Plaintiffs' concession and consistent with *Hensley*
the attorneys' fee lodestar amount will not include any award for
time spent on the risk management fee claim.

With regard to the remaining claims asserted in this case
(which include the claims under 49 C.F.R. § 376.12(d), (g), (h),
and (j), and the cause of action for fraud), the parties do not
materially dispute that those claims are related as defined under
*Hensley*.  All of these claims generally arose out of a common
core of facts involving the insurance surcharge at issue in this
case, but were simply pled under different, but related, legal

ORDER – PAGE 24

theories.[12]

Additionally, the parties both recognize that the Plaintiffs were successful only on their regulatory claim and their breach of contract claim premised on 49 C.F.R. § 376.12(g).  The other claims were either denied by the Court, or dropped by the Plaintiffs.  Therefore, this case falls within that part of *Hensley* addressing mixed success on several related claims, which require the Court to consider the relationship between the fees to be awarded and the results obtained in the scope of the litigation as a whole.  TEI requests the Court reduce the fee award on these grounds.

The Court agrees that a $5.1 million recovery to which the Plaintiffs are entitled is significant by any measuring stick.  Although the Plaintiffs were successful on only their § 376.12(g) claims, the Court cannot say the results were limited in comparison to the scope of the litigation as a whole.  The scope of this litigation, prosecuted through the various related legal theories, was to recover compensation for the improper withholding of the insurance surcharge at issue in this case.  As discussed in the February 3, 2003 Order all of the Plaintiffs' related claims sought to invalidate the insurance surcharge.  If any of those other claims had been granted, then in substance the

---

[12]*See generally* February 2, 2003 Order (discussing each claim separately).

ORDER - PAGE 25

remedy would have been to invalidate the surcharge and return additional compensation to the Plaintiffs.  The Plaintiffs accomplished that result through its § 376.12(g) claims, and essentially obtained the full results they would have obtained if all of their related claims were successful.

Additionally, the Plaintiffs obtained an injunction requiring TEI to conform its lease agreements to comply with 49 C.F.R. § 376.12(g).  That relief modified the terms of the contract relative to all owner-operators with whom TEI contracted, not just the Plaintiffs in this case.  Consistent with § 376.12(g) the injunction imposed an affirmative obligation on TEI to produce documentation to the owner-operators as required under the regulation.

Based on the foregoing, the Court concludes the Plaintiffs have obtained excellent results.  Under *Hensley*, such excellent results justify a "fully compensatory fee" which is the lodestar amount.  When the Court has all of the necessary information from which to calculate the lodestar amount the Court will use these excellent results to support the reasonableness of the lodestar figure.  Therefore, the Court will not reduce the fee award as TEI requests.

The Plaintiffs request, however, that the Court enhance the lodestar based on the results.  Normally, excellent results do "not provide an independent basis for increasing the [lodestar]

ORDER - PAGE 26

fee award." *Blum v. Stenson*, 465 U.S. 886, 900 (1984).  To
enhance the lodestar figure based on the results, the Plaintiffs
have the burden of establishing that the results were exceptional
and warrant an upward adjustment to the lodestar.  *Hensley*, 461
U.S. at 437.  In the absence of "specific evidence as to what
made the results [...] obtained [...] so 'outstanding'" there is
no reason to increase the fee award.  *Pennsylvania v. Delaware
Valley Citizens' Council for Clean Air*, 478 U.S. 546, 567-68
(1986).

Upon review of the Plaintiffs' briefs, the Court finds
little argument that supports the notion that this case was of
the exceptional nature that an upward enhancement to the lodestar
based on the results obtained would be appropriate.  Moreover,
the Plaintiffs do not support this request with any specific
evidence.  They simply state the $5.1 million recovery for the
Plaintiffs "forms a satisfactory basis for the lodestar
requested, as well as the adjustment requested."[13]  However, the
mere enormity of a recovery in a class action matter, by itself,
is not sufficient to support an upward enhancement to the
lodestar.  *In re Washington Public Power Supply System Securities
Litigation*, 19 F.3d 1291, 1303 (9th Cir. 1994).  The Plaintiffs
otherwise make no further argument showing how the results they
obtained were so exceptional or "outstanding" which would make

---

[13]Pls.' Br. at 14.

this one of those rare cases warranting an enhancement to the lodestar.  Having not met their burden to support an upward enhancement based on the results obtained the Court cannot grant it.

## III.  CONCLUSION

Based on the foregoing, once the parties address the reasonableness of the hours expended and submit affidavits on the appropriate hourly rates, then the Court will proceed to calculate the lodestar consistent with the formula outlined in this Order.  With regard to any adjustment to the lodestar TEI is not entitled to a reduction to the fees, and the Plaintiffs have not met their burden of establishing any enhancement is warranted.  Therefore, the lodestar is presumptively the reasonable fee to award in this case.

**THEREFORE, IT IS HEREBY ORDERED** as follows:

1.  The Plaintiffs' motion is **GRANTED** to the extent the Court finds Plaintiffs are the prevailing party entitled to an award of attorneys fees under 49 U.S.C. § 14704(e) to be calculated in accordance with the methodology set forth above. Their motion is **DENIED**, however, with respect to their request the Court enhance the lodestar figure that will ultimately be calculated.

2.  On or before **March 9, 2007**, TEI shall file a notice identifying all the specific hours billed by the Plaintiffs'

ORDER - PAGE 28

attorneys which TEI challenges as unreasonable.  Within 11 days after service of TEI's notice the Plaintiffs shall file a brief explaining the reasonableness of the hours TEI challenges.  The Court will enforce the burden the Plaintiffs have to establish the reasonableness of the hours their attorneys expended.

3.  On or before **February 23, 2007,** the Plaintiffs shall file an affidavit(s) setting forth the current hourly market rate for their attorneys' fees.  TEI may file an objection to the affidavit(s) within 11 days after service of the affidavit(s).  The Court will thereafter calculate the lodestar fee award consistent with this Order.

DATED this __12th__ day of February, 2007.

                              _/s/ Jeremiah C. Lynch_____
                              Jeremiah C. Lynch
                              United States Magistrate Judge

ORDER - PAGE 29